IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JOSEPH LAMONT STOKES,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) CIVIL NO. 13-998-CJP[1] |
| | ) |
| **JAMES N. CROSS,** | ) |
| | ) |
| Respondent. | ) |

# MEMORANDUM AND ORDER

**PROUD, Magistrate Judge:**

Petitioner Joseph Lamont Stokes, federal inmate incarcerated at FCI-Greenville, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging the Federal Bureau of Prisons' alleged failure to properly address his request for a transfer to the Chicago Residential Re-entry Center. For the reasons set forth below, the Petition is denied.

## FACTUAL BACKGROUND

Joseph Stokes was found guilty of being a felon in possession of a firearm, and sentenced on April 19, 2001 to a term of 240 months (Doc. 4). His projected release date is October 28, 2017 (Doc. 14-1, p. 4). At all times relevant to this matter, Stokes had a security designation of "medium" and a custody classification

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) (Doc. 12).

of "in," (Doc. 14-1, p. 4), which is the second highest custody level within the Bureau of Prisons ("BOP"). U.S. DEP'T OF JUSTICE, BOP PROGRAM STATEMENT NO. 5100.08, ch. 2, p. 2(2006). He was designated to FCI-Greenville, a facility that is equipped to provide a level of security and staff supervision commensurate with his custody level (*See* Doc. 14-1, p. 24).

In early April 2013, Stokes requested a transfer to the Chicago Residential Reentry Center ("the Chicago RRC") (Doc. 14-1, p. 25). His case manager explained that RRC placement would not be discussed until approximately 17 months before his release date (Doc. 14-1, p. 25). Dissatisfied with that answer, Stokes filed a request for an administrative remedy (BP-9) with the warden of FCI-Greenville, James Cross (Doc. 1-2, p. 2). Warden Cross denied Stokes' request for an immediate transfer to the Chicago RRC, and told Stokes that his transfer request would be considered at his next scheduled program review (Doc. 1-2, p. 1; Doc. 14-1, p. 25).

Stokes filed an appeal with the BOP's Regional Director (BP-10) (Doc. 14-1, p. 24). The Regional Director denied Stokes's appeal and stated, in part

> Currently, you are scored as a 16-point medium security level inmate. You are appropriately designated to the Federal Correctional Institution, Greenville, Illinois, a medium security facility commensurate with your security level. A transfer to an RRC is not warranted at this time. The RRCs are halfway houses and are only suitable to house inmates that are in transition from the institution to the community.

(Doc. 14-1, p. 24). The Regional Director also reiterated that Stokes would be evaluated for RRC placement prior to his release from prison (Doc. 14-1,

p. 24).

Stokes filed another appeal, this time with the BOP's Office of General Counsel (BP-11) (Doc. 1-2, p. 4). On July 1, 2013, Stokes' appeal was rejected and returned to him because it failed to comply with procedural requirements (*See* Doc. 1-2, p. 5). Stokes was instructed that he had 15 days to resubmit his appeal to the General Counsel in proper form (Doc. 1-2, p. 5). Stokes received the Notice of Rejection on July 10, 2013 (Doc. 1-2, p. 5). According to Stokes, he resubmitted his appeal that same day (Doc. 1-2, p. 6), and when he did not receive a response from the General Counsel by the deadline, he filed the instant petition (Doc. 1). BOP records indicate, however, that the Office of General Counsel never received Stokes's amended appeal (*See* Doc. 14-1, pp. 21—23).

## **DISCUSSION**

In his habeas petition, Stokes alleges that his request for an immediate transfer to an RRC was denied after the BOP misapplied the Second Chance Act, 18 U.S.C. § 3624(c), when he was not seeking pre-release placement in an RRC. Instead, according to him, he was seeking a routine transfer to an RRC under 18 U.S.C. § 3621(b), and therefore he was entitled to have his transfer request assessed on an individualized basis using the factors set forth in that statute. He claims the BOP failed to perform an individualized assessment using the requisite factors, and the BOP's actions were contrary to 18 U.S.C. § 3621(b) and violated his due process rights (Doc. 1; Doc. 10). Importantly, Stokes is only challenging the

manner in which the BOP denied his transfer request (Doc. 10). He is not challenging the policy or the rules behind the BOP's decision (*See* Doc. 10).

The Court is dubious regarding its jurisdiction to entertain this petition and whether a habeas action is the appropriate method for Stokes to bring his claim. However, even if Stokes' claim was properly brought, and giving Stokes the benefit of the doubt regarding his efforts to exhaust his administrative remedies,[2] his petition would still be denied because his claim is meritless.

### A. The Court Lacks Subject Matter Jurisdiction Over the Petition Under 28 U.S.C. § 2241

While the parties have not addressed the issue of the Court's jurisdiction over the action, the Court must do so as a threshold matter. *Bunn v. Conley*, 309 F.3d 1002, 1006–07 (7th Cir. 2002) (citing *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973) (dismissing § 1983 claims that should have been brought as petitions for writ of habeas corpus)).

A petition for a writ of habeas corpus is the proper vehicle for a prisoner's claims if the prisoner is challenging the fact or duration of his confinement, and seeking an immediate or speedier release. *See* 28 U.S.C. § 2241(c)(3); *Preiser*, 411 U.S. at 500; *Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137, 138 (7th Cir. 1995) ("Typically the writ of habeas corpus is used to completely free an inmate from unlawful custody.") On the other hand, if a prisoner is challenging the

---

[2] Respondent argues that Stokes did not exhaust his administrative remedies because he did not complete the fourth and final step of the BOP's administrative remedy process—an appeal to the BOP's Office of General Counsel (Doc. 8, 14). Stokes, on the other hand, claims he did submit the appeal, but he never received a response (Doc. 1, 10).

conditions of his confinement, then a civil rights action is the proper vehicle for his claims. *Preiser*, 411 U.S. at 499.

In *Graham v. Broglin*, the Seventh Circuit provided guidance to determine whether a prisoner's claims should be brought in a habeas corpus action or a civil rights action:

> If the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation—then habeas corpus is his remedy. *But if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law*, even if, as will usually be the case, the program or location or environment that he is challenging is more restrictive than the alternative that he seeks.

922 F.2d 379, 381 (7th Cir. 1995) (emphasis added).

Put differently, if the prisoner is not seeking release, or release is not available as a remedy to the prisoner's claims, then "his challenge can only concern the conditions of his confinement . . . not the fact of his confinement. As such, he may not proceed with a habeas petition." *Glaus v. Anderson*, 408 F.3d 382, 388 (7th Cir. 2005). *See also Pischke v. Litscher*, 178 F.3d 497, 499 (7th Cir. 1999) (holding habeas corpus is the proper vehicle for presenting a claim "only if the prisoner is seeking to 'get out' of custody in a meaningful sense.")

Based on the distinction outlined in *Graham*, the Seventh Circuit has held that habeas corpus was not the proper vehicle to challenge the denial of a request

for work release, a routine transfer between prisons, or a change in housing quarters within a prison.  *Pischke*, 178 F.3d at 500–01; *Falcon*, 52 F.3d at 139; *Adams v. Beldsoe*, 173 F. App'x 483, 484 (7th Cir. 2006).   These challenges were more akin to a civil rights action seeking a different program, location, or environment than to a habeas corpus action seeking a quantum change in level of custody.

Here, Stokes' challenge also falls on the civil rights side of the line.  According to Stokes, he is challenging the BOP's decision regarding a routine transfer request, and the manner in which it was made (Doc. 1; Doc. 10).   He asks the Court to order the BOP to transfer him to the Chicago RRC (Doc. 1).   As such, he is not requesting outright release, and release is not an available remedy.[3] Clearly, Stokes is not challenging being in custody, but only the location in which he is in custody, and therefore, his challenge can *only* concern the conditions of his confinement.   Habeas corpus is not the proper vehicle for such a challenge.

A habeas corpus action is also inappropriate here because Stokes does not contend that his custody is unlawful.   Instead, he claims only that the BOP failed to discharge a statutory duty to review his request for a transfer to an RRC.   "Section 2241  does not permit review of prison and parole decisions after the fashion of the Administrative Procedure Act; a prisoner seeking relief under § 2241 must demonstrate that the custody is unlawful, and not just that an administrative

---

[3]  The only thing the Court could possibly do in this situation is order the BOP to reconsider Stokes' transfer request.   However, even if the BOP granted the request, Stokes would not be released from custody, nor would the duration of his custody be shortened.   Stokes would still be serving the same amount of time, but in a different location.

official made a mistake in the implementation of a statute or regulation." *Bush v. Pitzer*, 133 F.3d 455, 456–57 (7th Cir. 1997).

That being said, district courts within the Seventh Circuit, including the Southern District of Illinois, have reached the opposite conclusion and allowed federal prisoners to bring similar claims in § 2241 petitions. *See, e.g.*, *Moody v. Rios*, Case No. 13-cv-1034, 2013 WL 5236747, at *1 n.1 (C.D. Ill. Sept. 17, 2013) (holding § 2241 is the proper way to challenge denial of inmate's request to be placed in a halfway house for more than six months); *Feazell v. Sherrod*, Case No. 10-cv-901, 2010 WL 5174355, at *1 (S.D. Ill. Dec. 16, 2010) ("[T]he Seventh Circuit has recognized that a § 2241 petition is a proper vehicle by which to challenge the BOP's decisions about inmate placement, though not to challenge BOP policies governing such placement."); *Pence v. Holinka*, Case No. 09–cv–489, 2009 WL 3241874, at *1 (W.D. Wis. Sept. 29, 2009) (holding § 2241 is the proper way to challenge BOP's decision to place inmate in a halfway house for only six months); *Woods v. Wilson*, Case No. 09-cv-0749, 2009 WL 2579241, at *1 (N.D. Ill. Aug. 19, 2009) (holding § 2241 is the proper way to bring claim that "BOP has not correctly used the criteria set forth in 18 U.S.C. § 3621 to determine his placement into a halfway house").

Therefore, assuming arguendo that Stokes' claim is cognizable under § 2241 and the Court may exercise jurisdiction over the petition, his claim would nevertheless fail on the merits.

**B.     Stokes Is Not Entitled to Habeas Relief on the Merits of His Claim**

To obtain habeas relief, a federal prisoner must show he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  In this instance, Stokes claims federal law, and perhaps the Due Process Clause, have been violated.  Based on the nature of Stokes' claim, the Court will outline the two statutes which govern the BOP's authority to place an inmate in an RRC before discussing the merits of his claim.

**1.  Statutory Background**

Under the first statute, 18 U.S.C. § 3621(b), the sole authority to designate the place of confinement for federal prisoners has been delegated to the BOP.  18 U.S.C. § 3621(b).  The BOP also has the authority to transfer a prisoner from one penal or correctional facility to another "at any time."  *Id.*  The BOP is given broad discretion to designate any penal or correctional facility that is available, appropriate, and suitable.  *Id.*  Initial placement and transfer determinations must be made with regard for the five factors listed in § 3621(b): (1) the resources of the facility; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 944(a)(2) of title 28.  18 U.S.C. §§ 3621(b)(1)–(5); 28 C.F.R. § 524.11.

Under the second statute,  18 U.S.C. § 3624(c), known as the Second Chance

Act, the BOP is charged with preparing prisoners who are approaching the end of their sentences for re-entry into society. *See* 18 U.S.C. § 3624(c). The BOP is obligated to consider placing an inmate in an RRC during the final portion of his sentence for up to twelve months. *See* 28 C.F.R. § 570.22. Again, this determination must be made in a manner consistent with the five factors in § 3621(b). 18 U.S.C. § 3624(c).

Here, Stokes is years away from the completion of his sentence, and therefore § 3621(b) governs the BOP's authority to consider his request for an immediate transfer to the Chicago RRC. *See, e.g., Sacora v. Thomas*, 628 F.3d 1059, 1062 (9th Cir. 2010) ("[Section 3621(b)] governs the BOP's authority in cases where a prisoner who has more than a year left to serve of his or her prison sentence requests a transfer to such a facility.")

**2. Analysis**

At the outset, to the extent Stokes is claiming the BOP's denial of his transfer request violated the Constitution, specifically his right to due process, it is clear that such a claim must fail. "It is axiomatic that before due process protections can apply, there must first exist a protectible liberty or property interest." *Solomon v. Elsea*, 676 F.2d 282, 284 (7th Cir. 1982). However, Stokes does not have a liberty interest in obtaining a transfer to a facility more desirable to him, such as the Chicago RRC. Congress has given the BOP full discretion in determining the placement of federal prisoners. *See* 28 U.S.C. § 3621(b) ("The Bureau of Prisons

shall designate the place of the prisoner's imprisonment.")  To that end, the Supreme Court has made it abundantly clear that a prisoner has no constitutional right to select a particular correctional facility for his placement or to be transferred to a different facility upon request.  *Olim v. Waukinekona,* 461 U.S. 238, 245 (1983); *Meachum v. Fano,* 427 U.S. 215, 225 (1976).  Without a protectable liberty interest, Stokes cannot claim that he was deprived of his right to due process when his request for a transfer was denied.

Additionally, to the extent Stokes is claiming that the BOP's denial of his transfer request was contrary to federal law and the individualized factors set forth in 18 U.S.C. § 3621(b), any such claim must fail.  Stokes has made no showing that the BOP acted in a manner inconsistent with the law in connection with his case.

The crux of Stokes's claim is that, under § 3621(b), he was entitled to an immediate, individualized evaluation considering the five factors as soon as he made his transfer request to his case manager.  However, nothing in the language of § 3621(b) suggests that is true.  In fact, some courts have held that the BOP is not required to consider the factors unless and until it decides to transfer an inmate; only then the factors should be considered in selecting the facility.  *See, e.g., Muniz v. Sabol,* 517 F.3d 29, 36 n.14 (1st Cir. 2008), *cert. denied,* 555 U.S. 853 (2008) (holding that § 3621(b) factors need not be considered until the BOP has decided to transfer a prisoner because "Congress surely did not intend" that "the BOP would never be free to decline a transfer request without considering the

five factors"); *Sanz v. United States*, Case No. 07-61596-CIV, 2008 WL 1820641, at *3 (S.D. Fla. Apr. 23, 2008) ("[W]hile a prisoner is free to apply for a transfer at any time, the BOP is not required to review such an application under § 3621(b)."); *Rodriguez-Calderon v. Lindsay*, Case No. 3:05-CV-2640, 2007 WL 2756878, at *1 (M.D. Pa. Sept. 20, 2007) ("An inmate simply cannot trigger the consideration of prison placement factors by asking for a transfer because an inmate has no right to be housed in any particular prison.")

But certainly, inmates are not entitled to an "on-demand" individualized assessment of their transfer requests at all times of the inmates' choosing. To suggest otherwise is preposterous. As the Eighth Circuit explained

> [A]n inmate is [not] entitled to a full-blown analysis of a request to transfer, involving individualized consideration of all five factors in § 3621(b), whenever the inmate chooses to make such a request. Taken to its logical conclusion, the argument advanced by the inmates would require the BOP to consider daily requests for transfer to an RRC from every inmate in a facility, and to deny such requests only after an individualized consideration of each inmate's request and the five statutory factors. . . . Congress surely did not intend such a result.

*Miller v. Whitehead,* 527 F.3d 752, 757 (8th Cir. 2008) (citing *Muniz*, 517 F.3d at 36 n.14). *See also Calloway v. Thomas*, Case No. 08-cv-544, 2009 WL 1925225, at *7 (D. Ore. July 1, 2009) ("[P]etitioner's interpretation could potentially create an unworkable situation for the BOP, requiring it to analyze such requests under § 3621(b) at an inmate's whim.").

Here, although Stokes claims that the BOP denied his transfer request without considering the five factors of § 3621(b), the evidence speaks to the

contrary.

First, the BOP evaluated a broad scope of information at Stokes' program review that necessarily included the five factors of § 3621(b). For example, the Program Review includes information regarding (1) Stokes' security designation and custody classification; (2) the nature of the offense for which Stokes is currently imprisoned; (3) a thorough review of Stokes' history and characteristics, including his academic and vocational skills, his participation in programs within the prison, his disciplinary history, his social development, and his ability to engage in activities of daily living outside the prison; and (4) notes about the sentencing court's recommendations (Doc. 14-1, pp. 4–20). Thus the record before the Court demonstrates that the BOP considered the five factors set forth in § 3621(b) at Stokes' program review, and in light of that consideration, concluded that a transfer to an RRC was not appropriate or justified.

Second, the Regional Director's response to Stokes' appeal indicates that the BOP considered Stokes' security designation and custody classification, from which it assessed the resources and appropriateness of the requested facility. The BOP concluded that an RRC was not commensurate with Stokes' current custody level. The BOP also considered the time remaining on Stokes' sentence in making its decision. Under the BOP's current policy, six months in an RRC is normally sufficient to help the inmate re-enter society, and anything "beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement." *See Sacora v. Thomas*, 628 F.3d 1059, 1064 (9th Cir.

2010) (describing the BOP's current policy regarding RRCs); *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) (same); *Miller*, 527 F.3d at 756 (same). While time remaining on the inmate's sentence is not listed as a statutory factor, it certainly bears on the statutory factors. *Miller*, 527 F.3d at 757.

The Regional Director did not explicitly reference or explain his rationale with respect to each of the five factors, as nothing in the language of § 3621 requires as much. *Miller*, 527 F.3d at 758 ("Although the warden's responses were brief, the statute does not require the BOP to provide prisoners with a detailed statutory analysis whenever a prisoner requests an immediate transfer to an RRC.") The Court finds it entirely reasonable that the BOP detailed to Stokes only the key considerations that shaped its good-faith decision, and left out mention of the factors that it ostensibly deemed less relevant or less important. As one court explained, requiring the BOP to analyze each factor in detail to the inmates would "make a mockery of the term 'agency discretion'" and turn the good-faith review requirement into a "mechanical pseudo-process, unduly burden the agency, and invite a flood of meritless litigation" about the BOP's thought process and the relative importance attributed to each factor. *Ganim v. Fed. Bureau of Prisons*, Case No. 06-cv-2957, 2006 WL 2847239, at *6 (D. N.J. Sept. 28, 2006).

Based on the foregoing, this Court finds that Stokes has no protected liberty interest in immediate, individualized consideration of his transfer request, and the BOP nonetheless complied with the requirements of the Constitution and § 3621(b). Therefore, Stokes has not demonstrated that he "is in

custody in violation of the Constitution or laws or treaties of the United States" as required for relief under 28 U.S.C. § 2241.

## CONCLUSION

A petition for a writ of habeas corpus is not the proper vehicle for Stokes' claims, and the Court is without subject matter jurisdiction to entertain his petition. In the alternative, Stokes' due process claim is meritless because it is not based on a protected liberty interest and the BOP complied with federal law in denying his transfer request. Accordingly, Joseph Stokes' petition for habeas relief under 28 U.S.C. § 2241 (Doc. 1) is **DENIED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED:

s/ **Clifford J. Proud**
CLIFFORD J. PROUD
United States Magistrate Judge